UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
In re:                                                                    :
                                                                          :    Chapter 13
SONYA KUVISH SUMMERS,                                                     :
                                                                          :    Case No. 14-10943 (ALG)
                                       Debtor.                            :
-----------------------------------------------------------------------x

## DECISION AND ORDER DENYING CONFIRMATION
## OF DEBTOR'S THREE YEAR PLAN

Sonya Kuvish Summers (the "Debtor") seeks confirmation of a three-year chapter 13 plan that she filed on April 7, 2014 and brought on for confirmation at a hearing on August 7, 2014. The only issue is whether a debtor whose income is above the median for the state in which she resides may confirm a three-year plan. The Debtor argues that even though she is an above median income debtor, the Court may confirm her three-year plan because she has negative disposable income. The Chapter 13 Trustee objects, arguing that § 1325(b) of the Bankruptcy Code mandates a five-year plan for an above median income debtor, whether or not the debtor has positive disposable income.

For the reasons discussed below, the Court agrees with the Trustee's interpretation of the statute and will deny confirmation of the Debtor's plan.

**Discussion**

Section 1325(b)(1) of the Bankruptcy Code provides that

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the

1

first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

In other words, if the Trustee or an unsecured creditor objects to confirmation, the debtor must either (1) pay all unsecured creditors in full; or (2) contribute all "projected disposable income" to unsecured creditors during the "applicable commitment period." The Debtor's plan does not provide for payment in full to unsecured creditors; thus it must comply with the second prong of § 1325(b)(1)(B) and pay all of the Debtor's "projected disposable income" during the "applicable commitment period."

**Projected Disposable Income**

Section 1325(b)(2) defines the term "disposable income" as "current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child . . .) less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor. . . ." 11 U.S.C. § 1325(b)(2). The Supreme Court has held that a determination of a debtor's "projected disposable income" requires a "forward-looking approach" that takes into account "significant changes in a debtor's financial circumstances [that] are known or virtually certain." *Hamilton v. Lanning*, 560 U.S. 505, 513 (2010).

The Trustee does not contest that the Debtor's plan contributes her projected disposable income to the payment of creditors. Indeed, whether the Court finds that the Debtor's projected disposable income is the Debtor's monthly income from Form 22C (-$1,143.39) or Schedule J ($32.06),[1] the Debtor's plan contributes her "projected disposable income" because it provides for 12 monthly payments of $30 and then 24 monthly payments of $225 to account for her anticipated reduced expenses one year into the plan.

---

[1] Form 22C calculates a debtor's "monthly disposable income" using standardized expenses, while Schedule J calculates a debtor's "monthly net income" using actual expenses.

2

**Applicable Commitment Period**

Since it is uncontested that the Debtor's plan commits her projected disposable income to the plan, the only disputed issue before the Court is whether an above median income debtor with negative disposable income is required to file a five-year plan. This requires consideration of the term "applicable commitment period" as used in § 1325(b)(1)(B).

The term "applicable commitment period" is defined in § 1325(b)(4)(A) as a period of "(i) 3 years; or (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than [the median family income in the applicable state. . . .]" 11 U.S.C. § 1325(b)(4)(A). An exception to the three-year or five-year minimum plan period exists "if the plan provides for payment in full of all allowed unsecured claims over a shorter period." 11 U.S.C. § 1325(b)(4)(B).

The Trustee contends that subsection (ii) of § 1325(b)(4)(A) applies because according to Form 22C, the Debtor is an above median income debtor as her annual income is $67,893.72, and the median income for New York State is $48,109. The exception included in § 1325(b)(4)(B) does not apply because, as mentioned above, the Debtor's plan does not provide for payment in full of all unsecured claims. According to the Trustee, it follows that the Debtor's plan must be a five-year plan.

The Debtor argues that the "applicable commitment period" is a monetary requirement that does not require the Debtor to file a five-year plan because her disposable income is negative. The Debtor supports her position with three arguments: (1) the plain language does not mandate that a debtor with negative or no disposable income commit any amount over either three or five years; (2) the monetary approach avoids absurd results that occur by employing the temporal approach favored by the Trustee, such as requiring the denial of a 59-month plan with

3

payments of $1,000/month, while permitting confirmation of a 60-month plan with payments of $1/month; and (3) the monetary approach increases the likelihood that a debtor will be able to complete a shorter plan and receive a discharge, whereas requiring debtors to file a five-year plan would delay a debtor's fresh start and more likely result in a conversion to chapter 7. In support of her position the Debtor cites *In re Andres*, BR 10-92563, 2011 WL 3320159, at *2 (Bankr. C.D. Ill. Aug. 2, 2011), which held that "where there is no projected disposable income, the requirement that the Debtor remain in Chapter 13 for a period of 5 years is not applicable." Other courts have agreed with *Andres*. *See In re Vidal*, 418 B.R. 135, 137–40 (Bankr. M.D. Pa. 2009); *In re Brady*, 361 B.R. 765, 776 (Bankr. D.N.J. 2007); *In re Mathis*, 367 B.R. 629, 631–32 (Bankr. N.D. Ill. 2007); *In re Green*, 378 B.R. 30, 38 (Bankr. N.D.N.Y. 2007).

However, the majority view—endorsed by the Court of Appeals in the Fourth, Ninth, Sixth, Eleventh and Eighth Circuits[2]—is that the "applicable commitment period" is a temporal requirement. *See Pliler v. Stearns*, 747 F.3d 260, 264 (4th Cir. 2014); *see also Danielson v. Flores (In re Flores)*, 735 F.3d 855, 858 (9th Cir. 2013) ("the statute defines a *temporal*, as distinct from a *monetary*, requirement for confirmation");[3] *Baud v. Carroll*, 634 F.3d 327, 344 (6th Cir. 2011); *Whaley v. Tennyson (In re Tennyson)*, 611 F.3d 873, 880 (11th Cir. 2010) ("'applicable commitment period' is a temporal term that prescribes the minimum duration of a debtor's Chapter 13 bankruptcy plan"); *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652, 660 (8th Cir. 2008); *see also In re Timothy*, 442 B.R. 28, 37 (B.A.P. 10th Cir. 2010) ("applicable commitment period for an above-median income debtor is a minimum of five years, unless all unsecured creditors are paid in full prior thereto"). Courts have thus disagreed with the

---

[2] There is no authority yet from the Second Circuit.
[3] *Flores* was an *en banc* reconsideration of a panel decision. *Danielson v. Flores (In re Flores)*, 692 F.3d 1021 (9th Cir. 2012) *reh'g en banc granted,* 704 F.3d 1067 (9th Cir. 2012) and *on reh'g en banc,* 735 F.3d 855 (9th Cir. 2013). There were two dissenting judges.

4

Debtor's contention that a five-year plan is not required when a debtor has negative projected disposable income, instead finding "that a plan cannot be confirmed unless its length is at least as long as the applicable commitment period, without regard to 'whether the debtor has positive, zero or negative projected disposable income.'" *Flores*, 735 F.3d at 858, quoting *Baud*, 634 F.3d at 336; *see also In re Eaton*, 08-62201, 2011 WL 1302144 at *7 (Bankr. N.D.N.Y. Apr. 5, 2011) ("As Debtors in this case are above median income, they must either commit to a plan length of five years or, alternatively, to a one hundred percent dividend to their unsecured creditors over a shorter plan length of their choosing.").

None of the Debtor's arguments undermines the majority view. First, a plain reading of the definition of the term "applicable commitment period" leads to the conclusion that the Debtor must propose a five-year plan because the statute clearly provides that if the debtor is an above median income debtor, a five-year plan is required. *See* 11 U.S.C. § 1325(b)(4)(A)(ii). The term "'[a]pplicable commitment period' at its simplest is a term that relates to a certain duration." *Tennyson*, 611 F.3d at 877. No exception to this requirement was included in the statute for a debtor with negative disposable income, even though the statute includes an exception to the five-year requirement if the plan pays all unsecured claims in full before the expiration of the period. *See* 11 U.S.C. § 1325(b)(4)(B).

Next, although the Debtor contends that the temporal approach may lead to an "absurd" result, both the Debtor and Trustee point out that the monetary approach may also lead to an "absurd" result, namely that a debtor with negative projected disposable income would be able to confirm a plan with a single plan payment of $1. At least under the temporal approach's result, where a debtor could confirm a 60-month plan with payments of $1/month, the plan might be modified upward under § 1329 on request of the Trustee or an unsecured creditor if the debtor's

5

disposable income later became positive. *See* 11 U.S.C. § 1329(a). With a shorter plan, the Trustee or unsecured creditor would have less time for the debtor's circumstances to change sufficiently to allow for greater plan payments. As the *Eaton* court held, "'[t]he price that Congress placed on admission into Chapter 13 is to tie the debtor to a plan for a definite period of time, which period is clearly defined in § 1325(b)(4) as either three or five years, depending on the debtor's income.'" *Eaton*, 2011 WL 1302144 at *7, quoting *In re Kidd*, 374 B.R. 277, 280 (Bankr. D.Kan. 2007).

Lastly, the Debtor argues that the temporal approach will impede debtors from completing chapter 13 plans and receiving a discharge. However, as the Debtor has pointed out, under either the temporal or monetary approach, a debtor with negative projected disposable income may confirm a plan with payments of $1/month, which is not particularly burdensome. Even if, as in our case, the Debtor will make more substantial payments for five years instead of three, the possibility that a debtor will be unable to complete a plan and receive a discharge is not alone sufficient to override statutory language that requires a five-year commitment period for above median income debtors. One of the main policies of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")—which added the term "applicable commitment period"—was to maximize recoveries for creditors. *See Baud*, 634 F.3d at 356 ("we must, as the Supreme Court did in *Lanning* and *Ransom*, apply the interpretation that has the best chance of fulfilling BAPCPA's purpose of maximizing creditor recoveries."); *see also Tennyson*, 611 F.3d at 879, quoting H.R. Rep. 109–31(I), p. 2, 2005 U.S.C.C.A.N. 88, 89 ("'The heart of [BAPCPA's] consumer bankruptcy reforms . . . is intended to ensure that debtors repay creditors the maximum they can afford.'"); *Frederickson*, 545 F.3d at 658 ("Congress's intent [is] that under BAPCPA increased payments will flow from above-median debtors to their unsecured

6

creditors."). Most debtors confirm a five-year rather than a three-year plan, and the period is not so burdensome as to call the structure of chapter 13 into question. The Court does not ignore the fact that many chapter 13 debtors fail to complete their plans, or the burden on individuals from a five-year plan; it might be reasonably assumed, however, that debtors with above median income could more readily bear the burden successfully.

## Conclusion

The Court follows the majority view for the reasons stated above and holds that the "applicable commitment period" sets forth a temporal requirement, which mandates that the Debtor must file a five-year plan. Accordingly, confirmation of the Debtor's three-year plan is denied, without prejudice to the filing of a five-year plan.

IT IS SO ORDERED.

Dated: New York, New York
September 16, 2014

**s/Allan L. Gropper**
UNITED STATES BANKRUPTCY JUDGE